**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Duncan John SHOCKLEY, Defendant-Appellant.**

**No. 72-2950.**

United States Court of Appeals,
Ninth Circuit.

Feb. 19, 1974.

Martha Goldin (argued), Alan Saltzman, Hollywood, Cal., for defendant-appellant.

Robert Bonner (argued), Eric A. Novles, Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and NIELSEN, District Judge.[*]

EUGENE A. WRIGHT, Circuit Judge:

Defendant appeals from a conviction for failure to report for induction as ordered, in violation of 50 U.S.C. App. § 462(a). We reverse.

On July 16, 1970, defendant Shockley was ordered to report for induction on August 4, 1970. Prior to the latter date, Shockley and his sister requested a postponement of his induction in order to have his physical acceptability reevaluated. On July 31, 1970, the local board granted his request and indefinitely postponed induction. Following further medical processing, the local board was notified on October 1, 1970, that Shockley was fully acceptable for military service.

On October 5, 1970, Shockley requested and received Selective Service Form 150 (conscientious objection) which he returned to the local board on November 17, 1970. The board examined the claim, determined that it was expedient,[1] and refused to reclassify Shockley. He was then advised that he was still under an order to report for induction and would be notified by letter of the date and time to report. Having later been given a reporting date, he failed to report.

Shockley argues that the local board improperly rejected his claim for classification as a conscientious objector and

---

[*] Of the Southern District of California.

1. The minutes of the local board contained the following entry: "C.O. claim reviewed under SSR 1625.2. Claim denied as it is expedient in nature." The form letter notice to defendant informed him that his classification had not been reopened because the board did not "specifically find there has been a change in status resulting from circumstances over which you had no control."

that the induction order was, therefore invalid. The government responds that the local board was precluded from considering Shockley's conscientious objection claim by the proviso of 32 C.F.R. § 1625.2 (1971), as interpreted in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), since the claim was made after the local board had mailed him a notice of induction. The government's position is that Shockley's conscientious objection claim should have been asserted through military procedures after induction and that a post-notice conscientious objection claim cannot serve as a defense for failure to report.

Section 1625.2 provides that

the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an order to report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in circumstances in the registrant's status resulting from circumstances over which the registrant had no control.

In *Ehlert* the Supreme Court held that conscientious objection which crystallized after the mailing of a notice of induction was not a "change in circumstances over which the registrant had no control," and that the local board lacked jurisdiction to reopen a classification to consider such a claim. The court concluded that the local board's refusal to consider Ehlert's claim under those circumstances was not a defense to failure to report.

The issue in Shockley's case is whether § 1625.2 and *Ehlert* proscribe local board consideration of a post-notice conscientious objection claim when the local board has already reopened the classification on other grounds and has held the order of induction in abeyance for an indefinite period of time. Shockley would have us interpret § 1625.2 to read that once the classification as a whole has

been reopened, here to consider a medical claim, the local board has jurisdiction to reconsider every aspect of the classification, including claims that themselves would not justify a reopening. We could reach this result by concluding either that consideration of the ancillary claim did not require a "reopening of the classification" or that since the order for induction was held in abeyance, the claim was no longer made "after a notice of induction had been mailed." Under either characterization the claim would be removed from the literal proscription of § 1625.2.

The government argues that reopening the classification for medical reasons and holding the order of induction in abeyance does not give the local board jurisdiction to consider ancillary claims, but rather that the local board's jurisdiction after reopening is limited to the issue which justified the reopening, here a medical claim. To reach this result, we could characterize the medical reopening of the classification as being limited to the medical question and as not being a general reopening of the classification. Thus, to consider the conscientious objection claim, the local board would further have to reopen the classification, violating the proscription of § 1625.2 as interpreted by *Ehlert*. We would also be required to conclude that although the notice of induction was held in abeyance, it had already been mailed and had a continuing, albeit unspecific, element of force, thus bringing the case within the post-induction notice situation controlled by § 1625.2

The words of the regulation alone admit reasonably of either of these conflicting interpretations. Therefore, we must look to the purposes of the regulation and adopt the interpretation that is more consistent with those purposes.

The apparent purpose of § 1625.2 is to facilitate the orderly processing of selective service classifications and inductions. See Ehlert v. United States, *supra*, 402 U.S. at 105, 91 S.Ct. 1319, 28 L.Ed.2d 625. By requiring claims to be raised in a timely fashion, and by facili-

tating the orderly transfer of authority from the local board to the Army, § 1625.2 furthers two ends. First, the administrative process involved in selective service cases, like any administrative process, is benefited by rules designed to effect the timely and orderly processing of claims. Second, and more specifically, the government's constitutional authority to raise an army would be frustrated if in time of crisis the induction process was unduly delayed by the processing of post-notice claims. The regulation has balanced this interest with the interest in having all claims fairly heard by permitting some, but not all, post-induction notice claims to be heard by the local board prior to induction. But § 1625.2 seeks to reduce the delay inherent in post-notice claims by limiting local board jurisdiction to claims involving changes in circumstances beyond the registrant's control.

The interests of orderly administrative processes are not as acute in Shockley's situation as they were in *Ehlert*, and Shockley's interest in a timely decision on his claim is more acute. In *Ehlert*, the court concluded that the delay in processing the registrant's claim during "the brief period between notice and induction," 402 U.S. at 102, 91 S.Ct. at 1322, was a reasonable burden on the registrant in order to avoid the necessity of having the local board stop the induction process to reconsider a case with which it was no longer dealing. In Shockley's situation, however, the orderly administrative process had already been stopped, and the local board had already expended time and energy in reasserting authority over the case to consider the medical claim. Moreover, the "brief delay" between notice and induction in *Ehlert* became a more lengthy delay here while the board resolved the intervening medical claim.

Although these differences tend to support Shockley's position that the purpose of § 1625.2 would not be advanced

by its application under these circumstances, the differences alone do not exhaust the analysis. First, the increased delay in resolving Shockley's conscientious objection claim, resulting from the abeyance of the induction order, was at the behest of Shockley himself. It was he, after all, who requested a reopening of his classification for medical re-evaluation.[2]

Second and more important, the government's interest in the orderly and timely processing of registrants and inductees was not eliminated by the mere fact that the induction process was stopped to reopen the classification on medical grounds. Even though the induction process was already delayed, the government has an interest in avoiding a further delay resulting from a requirement to hear every ancillary claim which the registrant presents. Although the government's interest in avoiding an *additional* delay may not be as great as the interest in avoiding the first delay, the interest is nevertheless significant. And this interest would be furthered by applying the proscription of § 1625.2 in the circumstances of this case.

If § 1625.2 were interpreted in favor of Shockley's position, two effects deleterious to the timely processing of claims might occur. First, registrants might be encouraged to assert marginal post-notice medical claims merely as a vehicle on which to attach a claim of conscientious objection. The necessity for the local board to sort out these claims from meritorious medical claims could adversely affect the administration of all claims. Indeed, such a result might have the undesirable consequence of causing local boards to look at all post-notice medical claims with jaundiced eyes.

Second, registrants might be encouraged to withhold the assertion of conscientious objection claims until after it has been determined whether they will

2. We do not decide whether a registrant would be required to await induction to assert a post-notice conscientious objection claim where the delay was the result of the local board's initiative in postponing induction.

escape induction because quotas have already been filled. In an attempt to take two bites of the apple, which of itself would not be objectionable, registrants would prevent the local board from deciding conscientious objection claims in a timely fashion prior to notice of induction. The easiest method of preventing this practice is categorically to proscribe post-notice consideration of conscientious objection claims by the local board, regardless of whether the board reopens the classification on other grounds.

■ We conclude that the purpose of § 1625.2—to effect the timely and orderly processing of claims—would be furthered by its application in this case. To be sure, that purpose would not be advanced as greatly here as it would in the *Ehlert* situation. Nevertheless, the purpose of § 1625.2 is significantly affected by its applicability to Shockley's situation. Thus, the government's interpretation is reasonable in light of the regulation's purposes and must, therefore, be adopted. *See* Ehlert v. United States, *supra*, 402 U.S. at 105, 91 S.Ct. 1319, 28 L.Ed.2d 625. Immigration Service v. Stanisic, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). We interpret § 1625.2 to proscribe local board consideration of a post-notice conscientious objection claim where, at the request of the registrant, the classification has been reopened to consider a post-induction medical claim and the order of induction has been held in abeyance.

Our conclusion that the Army, rather than the local board, was the proper forum for Shockley to assert his conscientious objection claim does not end our inquiry. Although we now instruct Shockley of the proper forum, the situation as Shockley found it in 1970 was far from clear. The local board's action on the conscientious objection claim was ambiguous with reference to whether the claim was decided on the merits. Shockley was notified that his classification had not been reopened because the board did not "specifically find there has been a change in status resulting from circumstances over which [he] had no control." This seems to indicate that the board declined jurisdiction over the claim due to the proscription of § 1625.-2. But the minute entry of the local board indicated that the conscientious objection claim had been reviewed and rejected on the merits. *See* note 1, supra.

The ambiguity of the local board's action whether it decided the conscientious objection claim on the merits coupled with the ambiguity of § 1625.2 whether the board had power to decide the claim on the merits—which we have now resolved—presented Shockley with an intolerable dilemma. If the local board lacked jurisdiction to consider the conscientious objection claim on the merits, then he could enter the Army, assert his claim, and receive judicial review by applying for a writ of habeas corpus. But judicial review would not be available through a defense in a prosecution for failure to report for induction. *See* Ehlert v. United States, *supra.*

On the other hand, if the local board did have jurisdiction to consider his conscientious objection claim on the merits, and in fact did so, judicial review would be available in a prosecution for failure to report. But since the Army looks disfavorably upon claims which have been adversely decided on the merits by the local board,[3] Shockley would not effectively be able to assert his claim of conscientious objection if he submitted to induction and applied for discharge.

---

3. Army Regulation 635–20 § 3.6(2) states that in-service claims of conscientious objection will not be favorably considered if "based solely on conscientious objection claimed and denied by the Selective Service System prior to induction."

Thus, to ensure an effective forum in which to assert his conscientious objection claim, Shockley was required to choose between submitting to or refusing induction based on his evaluation whether the local board decided his claim on the merits. Neither the local board, through an unequivocal refusal to decide the claim on the merits, nor the courts, through an unequivocal interpretation of § 1625.2 which precluded the local board from exercising jurisdiction over the merits of the claim, offered Shockley any guidance for making this determination.

Neither Ehlert v. United States, *supra*, nor United States v. Musser, 414 U.S. 31, 94 S.Ct. 196, 38 L.Ed.2d 190 (1973), controls in this situation, since the registrants in those cases were either not confronted with the combination of ambiguities which resulted in Shockley's dilemma, or did not challenge their conviction on that basis. In *Ehlert*, the registrant might have had legitimate doubt whether a conscientious objection claim resulted in "a change in circumstances beyond the control of the registrant," thus avoiding the proscription of § 1625.2. Therefore, Ehlert may have had legitimate doubts about the jurisdiction of the local board to hear his claim. But since the local board unequivocally refused to decide this claim on the merits, 402 U.S. at 100, 91 S.Ct. 1319, 28 L.Ed.2d 625, he could have no legitimate fear that the Army would look disfavorably upon his claim under § 3.6(2) of Army Regulation 635–20.[4] Therefore, Ehlert was given reasonably clear guidance from the local board's unequivocal action that his proper forum was in-service review.

In *Musser*, the court did not consider the issue whether a dilemma similar to Shockley's was permissible, although one of the registrants, Waldron, apparently was faced with such a dilemma and could have raised the issue. Rather in *Musser* the registrants argued that *Ehlert* controlled only those cases where the local board unequivocally refused to consider the merits of the post-notice claim. The registrants argued that where the local board did make a determination on the merits, even though the board was not required to do so under *Ehlert*, § 3.6(2) of Army Regulation 635–20 would preclude the Army from looking favorably upon an in-service claim. The registrants' argument was not that they did not know where to make their claim when they refused induction, as in Shockley's case, but rather that there was, in fact, no opportunity for making the claim in the Army. The registrants asserted that if neither the Army nor the local board would hear the claim, they would be placed in a no-man's land without review, a situation condemned in *Ehlert*. 402 U.S. at 104 & n. 7, 91 S.Ct. 1319, 28 L.Ed.2d 625.

The court rejected this argument as being based on a misunderstanding of *Ehlert*. *Ehlert* "did not hold merely that a local board would be permitted to refuse reopening of a classification in such a situation, but that it was without power to reopen under such circumstances." 414 U.S. at 37, 94 S.Ct. at 201 (citations omitted). Since the local board lacked power to decide on the merits, the court concluded, the Army could not possibly apply § 3.6 so as to prejudice an in-service claim.

Once the court concluded that the Army could not, in fact, apply § 3.6 so as to deny the registrants an effective in-service forum, the court did not go on to consider the fact that one of the registrants, Waldron, was faced with a dilemma at the time of induction similar to Shockley's. Even though this argument was open to Waldron, the court clearly did not consider it, and *Musser* does not stand as precedent against Shockley's claim here.

The conclusion that the court did not consider the "dilemma" question is emphasized by the fact that the court considered Waldron's argument to be the same as that asserted by Musser. But

---

4. *See* note 3, *supra*.

when Musser refused induction, he had an unequivocal guideline from *Ehlert v. United States*, 422 F.2d 332 (9th Cir. 1970), that conscientious objection was not a circumstance beyond the registrant's control. Therefore, he was not faced with the ambiguity in the meaning of the regulation that faced Waldron, and the argument that he had insufficient notice concerning the proper forum to assert his claim was not open to him. The fact that the court did not draw this distinction between Musser's situation and Waldron's situation indicates that the court was not considering the dilemma with which Waldron and Shockley were faced.

Since the court did not consider the situation presented here in either *Ehlert* or *Musser*, we must determine the effect of Shockley's dilemma on his conviction.

Congress undeniably has the power to require that claims be made, in the first instance, with particular administrative bodies and to limit the availability of judicial review of administrative action to particular judicial forums. For example, 50 U.S.C. App. § 460(b)(3) precludes pre-induction review of selective service classifications except as a defense to a criminal prosecution for failure to report. The Supreme Court has upheld this proscription as a valid congressional control of federal court jurisdiction. *Estep v. United States*, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); *Fein v. Selective Service System Local Board No. 7*, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed. 2d 298 (1972). And *Ehlert* approved the requirement that post-notice conscientious objection claims be asserted in the military after induction. But once Congress created an exemption from induction, due process requires that *some* opportunity be afforded the registrant to assert his claim.

█ While it is true that Shockley was afforded a forum in which to assert his conscientious objection claim, *i.e.*, in-service review, he was not given reasonable guidance with which to identify that forum. He was forced to guess whether judicial review of his claim would be preserved through refusal of or submission to induction. He guessed incorrectly by refusing induction, but to hold that he thereby forfeited his right to assert his conscientious objection claim would relegate that right to chance. And to affirm his conviction would be to punish him for making a reasonable, albeit mistaken, attempt to select the proper forum in which to assert his claim. Due process does not tolerate such a result.

Ordinarily, the proper remedy would be to vacate the conviction and permit Shockley to choose between submission to and refusal of induction with the knowledge that his conscientious objection claim would be preserved only through submission. But since the draft has expired, such a remedy would be pointless.

The conviction is reversed.

NIELSEN, District Judge, dissents.